UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____X

NASSAU COUNTY PUBLIC ADMINISTRATOR
of the ESTATE OF WALTER ORLANDO CRUZ
PEREZ, Deceased,

                      Plaintiff,               Docket No. 18-cv-5327 (GRB)(AYS)

    -against-

THE COUNTY OF NASSAU, THE NASSAU
COUNTY POLICE DEPARTMENT, NASSAU
COUNTY POLICE DEPARTMENT OFFICER
NICOLE BETTES, NASSAU COUNTY POLICE
DEPARTMENT OFFICER JACK CASTRONOVA,
NASSAU COUNTY POLICE DEPARTMENT
OFFICER RAY MORAN, NASSAU COUNTY
POLICE DEPARTMENT OFFICER ROBERT
SACCO, NASSAU COUNTY POLICE
DEPARTMENT OFFICER DANIEL CIVORELLI,
NASSAU COUNTY POLICE DEPARTMENT
OFFICER SARGEANT GUADINO (first name
currently unknown), and JOHN DOES and JANE
DOES 1-100, said names being fictitious and intended
to refer to those individuals and/or entities that acted
as, and/or were employed as, police officers by THE
COUNTY OF NASSAU and/or THE NASSAU
COUNTY POLICE DEPARTMENT in the events
which are the subject matter of this action.

                 Defendants.

_____X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTIONS *IN LIMINE*

# **TABLE OF CONTENTS**

**Page**

FIRST MOTION *IN LIMINE* –

      THE EXPERT REPORTS OF DR. DARRIN K. PORCHER AND
      DR. JENNIFER L. HAMMERS CONSTITUTE INADMISSIBLE
      HEARSAY AND MUST BE EXCLUDED ...................................................................... 1

SECOND MOTION *IN LIMINE* –

      MINIMALLY, SUBSTANTIAL PORTIONS OF THE PORCHER REPORT
      AND THE ANTICIPATED TESTIMONY FORECASTED BY THAT
      REPORT MUST BE PRECLUDED ................................................................................... 1

    (i)     Dr. Porcher's Legal Conclusions Must Be Excluded ............................................. 2

    (ii)    Opinion That Intrudes Upon the Court's Role Must Be Excluded ........................ 5

    (iii)   Opinion And Testimony Regarding Police Tactics Allegedly Employed
           Prior To The Use Of Force Must Be Excluded......................................................... 8

           (a)    Opinion Regarding Alleged Policy Violations Must Be Excluded .......... 10

           (b)    Opinion Evidence That Manufacturer's Recommendations
                 Were Violated Must Be Precluded ............................................................ 12

           (c)    Opinion Evidence as To What Constitutes A "Successful Taser
                 Application" Under NCPD Policy Must Be Excluded ............................. 12

           (d)    Medical Opinion Evidence from Dr. Porcher Must Be Excluded ............ 14

           (e)    Dr. Porcher Must Be Precluded From Offering His Version
                 Of The Facts............................................................................................. 15

           (f)    Content and Testimony Related to the *Greenaway* Case Must
                 Be Excluded............................................................................................. 16

THIRD MOTION *IN LIMINE* –

      PRECLUDING PLAINTIFF FROM ARGUING OR SOLICITING
      EVIDENCE TO THE EFFECT THAT THE OFFICERS SHOULD
      HAVE RESPONDED DIFFERENTLY OR USED LESS FORCE................................. 17

FOURTH MOTION *IN LIMINE* –

      PRECLUDING PLAINTIFF FROM MAKING REFERENCE TO ANY
      UNRELATED EXAMPLES OF EXCESSIVE FORCE.................................................. 18

FIFTH MOTION *IN LIMINE* –

     THE ICAT TRAINING MANUAL AND RELATED PROCEDURES MUST
     BE EXCLUDED FROM EVIDENCE............................................................................. 18

SIXTH MOTION *IN LIMINE* –

     PORTIONS OF DR. HAMMERS' REPORT AND THE TESTIMONY IT
     FORECASTS MUST BE PRECLUDED ........................................................................ 19

SEVENTH MOTION *IN LIMINE* –

     PLAINTIFF'S NOTICE OF CLAIM MUST BE EXCLUDED ...................................... 19

EIGHTH MOTION *IN LIMINE* –

     NEWSPAPER ARTICLES MUST BE PRECLUDED..................................................... 20

NINTH MOTION *IN LIMINE* –

     THE TODD AFFIDAVIT MUST BE EXCLUDED FROM EVIDENCE ...................... 20

TENTH MOTION *IN LIMINE* –

     ANY REFERENCE OR EVIDENCE RELATING TO INDEMNIFICATION
     OR THE "COUNTY'S ATTORNEYS" MUST BE PRECLUDED................................. 20

ELEVENTH MOTION *IN LIMINE* –

     EVIDENCE REGARDING PURPORTED PECUNIARY OR ECONOMIC
     DAMAGES MUST BE PRECLUDED .......................................................................... 21

TWELFTH MOTION *IN LIMINE* –

     PLAINTIFF MUST BE PRECLUDED FROM SUBMITTING A
     SPECIFIC DOLLAR AMOUNT REGARDING NON-ECONOMIC
     DAMAGES TO THE JURY............................................................................................ 22

THIRTEENTH MOTION *IN LIMINE* –

     DEFENDANTS JOHN DOES AND JANE DOES 1-100 SHOULD BE
     REMOVED FROM THE CAPTION AND PLAINTIFF SHOULD BE
     PRECLUDED FROM RAISING CLAIMS AGAINST THEM AT TRIAL ................... 23

FOURTEENTH MOTION *IN LIMINE-*

PLAINTIFF SHOULD BE PRECLUDED FROM USING AND/OR REFERRING TO
THE TERM "HOMICIDE" TO AVOID PREJUDICE TO THE DEFENSE AND JURY
CONFUSION……………………………………………………………………….…24

CONCLUSION..................................................................................................................... 25

16632038.1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abeyta v. City of New York*,
   588 F. App'x 24 (2d Cir. 2014) .............................................................................................10

*Aktas v. JMC Development Co., Inc.*,
   2013 WL 55827 (N.D.N.Y. Jan. 3, 2013)................................................................................1

*Antic v. City of New York*,
   2017 WL 3491967 (S.D.N.Y. Aug. 14, 2017), *aff'd* 740 Fed. Appx. 203 (2d
   Cir. 2018) ...............................................................................................................................2

*Ashley v. Civil*,
   2019 WL 1441124 (E.D.N.Y. Apr. 1, 2019) ....................................................................20, 23

*Bancroft v. City of Mt. Vernon*,
   672 F. Supp. 2d 391 (S.D.N.Y. 2009)....................................................................................17

*Bermudez v. City of New York*,
   2019 WL 136633 (E.D.N.Y. Jan. 8, 2019) ..................................................................11, 17, 18

*Bettis v. Bean*,
   2015 WL 5725625 (D. Vt. Sept. 29, 2015).............................................................................24

*In re Blech Sec. Litig.*,
   2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003) ........................................................................19

*Brown v. Mermaid Plaza Assocs., LLC*,
   2016 WL 5802779 (E.D.N.Y. July 20, 2016)..........................................................................16

*Caldwell v. City of New York*,
   2024 WL 774967 (S.D.N.Y. Feb. 26, 2024)............................................................................24

*Choi v. Tower Rsch. Cap. LLC*,
   2 F.4th 10 (2d Cir. 2021) ........................................................................................................2

*City and County of San Francisco, California v. Sheehan*,
   575 U.S. 600 (2015).............................................................................................................8, 10

*City of Canton v. Harris*,
   489 U.S. 378 (1989)..................................................................................................................5

*Consorti v. Armstrong World Industries, Inc.*,
   72 F.3d 1003 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031, 116 S.
   Ct. 2576, 135 L. Ed. 2d 1091 (1996) ................................................................................22, 23

*Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*,
  2013 WL 978980 (S.D.N.Y. Mar. 12, 2013) .............................................................................1

*Cruz v. City of New Rochelle*,
  2017 WL 1402122 (S.D.N.Y. 2017).........................................................................................9

*Dasrath v. City of New York*,
  2018 WL 10501877 (E.D.N.Y. Sept. 25, 2018) ................................................................8, 12

*Design Strategy, Inc. v. Davis*,
  469 F.3d 284, 293 (2d Cir. 2006); 469 F.3d 294, 297 ..........................................................22

*Dickson v. New York State Off. of Child. & Fam. Servs.*,
  2023 WL 8788908 (E.D.N.Y. Dec. 19, 2023)........................................................................20

*DiGennaro v. Town of Gates Police Dep't*,
  2013 WL 3097066 (W.D.N.Y. June 18, 2013) ......................................................................24

*Edelhertz v. City of Middletown*,
  943 F. Supp. 2d 388 (S.D.N.Y. 2012) *aff'd* 714 F.3d 749 (2d Cir. 2013)...............................19

*Edwards v. City of New York*,
  2011 WL 2748665 (E.D.N.Y. July 13, 2011).........................................................................11

*Ellis v. City of Providence, Kentucky*,
  2023 WL 4919683 (W.D. Ky. Aug. 1, 2023) ...........................................................................7

*In re Elysium Health-ChromaDex Litig.*,
  2022 WL 421135 (S.D.N.Y. Feb. 11, 2022)...........................................................................15

*Equal Emp. Opportunity Comm'n v. United Health Programs of Am., Inc.*,
  2017 WL 10088567 (E.D.N.Y. Sept. 4, 2017) .......................................................................23

*Fate v. Village of Spring Valley*,
  2013 WL 2649548 .........................................................................................................5, 13, 14

*Galapo v. City of New York*,
  95 N.Y.2d 568 (2000)..............................................................................................................11

*Gibbs v. Borona*,
  2021 WL 1171558 (D. Conn. Mar. 29, 2021) ..........................................................................2

*Giles v. Rhodes*,
  2000 WL 1425046 (S.D.N.Y. Sept. 27, 2000)........................................................................15

*Graham v. Connor*,
  490 U.S. 386 (1989)........................................................................................................7, 8, 17

*Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2002 WL 826956 (S.D.N.Y. May 1, 2002) ...............................................................................1

*Greenaway v. Cnty. of Nassau*,
  97 F. Supp. 3d 225 (E.D.N.Y. 2015) ....................................................................................17

*Hernandez v. Kelly*,
  2011 WL 2117611 (E.D.N.Y. May 27, 2011) ........................................................................21

*Jean-Laurent v. Hennessy*,
  840 F. Supp. 2d 529 (E.D.N.Y. 2011) ..................................................................................23

*Ladner v. City of New York*,
  20 F.Supp.2d 509 (E.D.N.Y. 1998) ......................................................................................20

*Lawson v. Trowbridge*,
  153 F.3d 368 (7th Cir. 1998) ...............................................................................................21

*LinkCo, Inc. v. Fujitsu Ltd.*,
  2002 WL 1585551 (S.D.N.Y. July 16, 2002) .........................................................................16

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003), *aff'd,* 99 F. App'x 274 (2d Cir. 2004).....................................2

*Maselli v. Durden*,
  2022 WL 18542265 (D.N.H. May 12, 2022)................................................................8, 14, 15

*Miles v. City of New York*,
  2002 WL 31410346 (E.D.N.Y. Oct. 24, 2002)........................................................................20

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 1991)..........................................................................................4, 5, 7

*Nunez v. Diedrick*,
  2017 WL 4350572 (S.D.N.Y. June 12, 2017) ........................................................................21

*Okeke v. N.Y. & Presbyterian Hosp.*
  2017 WL 2484200 (S.D.N.Y. June 6, 2017) ..........................................................................20

*Pagan v. City of New York*,
  2019 WL 8128482 (E.D.N.Y. Mar. 28, 2019)........................................................................12

*Paul v. City of New York*,
  2023 WL 3724152 (S.D.N.Y. 2023)........................................................................................2

*People v. Odell*,
  26 A.D.3d 527, 529 (3d Dep't 2006) ....................................................................................24

*Phillips v. City of Middletown,*
  2021 WL 4462821 (S.D.N.Y. Sept. 29, 2021)..................................................8, 10

*Pierce v. City of New York,*
  2017 WL 10188217 (E.D.N.Y. June 9, 2017) .......................................................18

*Primavera Familienstifung v. Askin,*
  130 F. Supp. 2d 450 (S.D.N.Y. 2001)..................................................................16

*Rasmussen v. City of New York,*
  766 F.Supp.2d 399 (E.D.N.Y.2011) ....................................................................23

*Reynolds v. Am. Airlines, Inc.,*
  2017 WL 5613115 (E.D.N.Y. Nov. 21, 2017).......................................................23

*Rizk v. City of New York,*
  2022 WL 900784 (E.D.N.Y. Mar. 28, 2022)....................................................2, 12

*Rose v. City of Utica,*
  777 Fed. Appx. 575 (2d Cir. 2019)........................................................................8

*Ross v. Guy,*
  2022 WL 768196 (E.D.N.Y. Mar. 14, 2022).......................................................21

*Salim v. Proulx,*
  93 F.3d 86 (2d Cir. 1996)........................................................................................8

*Sapp v. Marcum,*
  2023 WL 3965718 (M.D. Florida, June 13, 2023) ..............................................10

*Scism v. Ferris,*
  2022 WL 2915745 (N.D.N.Y. 2022) ......................................................................2

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,*
  528 F. Supp. 3d 219 (S.D.N.Y. 2021), *aff'd sub nom. Picard Tr. for SIPA*
  *Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 49 F.4th
  170 (2d Cir. 2022)....................................................................................................1

*Stevenson v. Hearst Consol. Publ'ns, Inc.,*
  214 F.2d 902 (2d Cir.1954)...................................................................................19

*Tomasino v. Estee Lauder Cos.,*
  2015 WL 1470177 (E.D.N.Y. March 31, 2015) ..................................................19

*Trs. of United Plant & Prod. Workers Loc. 175 Benefits Fund v. Carlo Lizza &*
  *Sons Paving, Inc.,*
  2019 WL 5699992 (E.D.N.Y. Aug. 29, 2019)....................................................23

16632038.1

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991)..................................................................................................2

*Vazquez v. City of N.Y.*,
   2014 WL 4388497 (S.D.N.Y. Sept. 5, 2014)..........................................................................10

*Williams v. McCarthy*,
   2007 WL 3125314 (S.D.N.Y. Oct. 25, 2007)..........................................................................21

*Woolfolk v. Baldofsky*,
   2022 WL 2600132 (E.D.N.Y. July 8, 2022)................................................................16, 17, 18

*Zal v. Steppe,*
   968 F.2d 924, 925 (9th Cir. 1992) ........................................................................................24

**Statutes**

Civil Rights Act of 1871 Section 1983 ......................................................................................5, 6

**Other Authorities**

Fourth Amendment ...............................................................................................................8, 9, 10

Constitution of the United States of America ...............................................................................10

Federal Rule of Civil Procedure 4(m)...........................................................................................24

Federal Rules of Civil Procedure Rule 26(a)(1)(A)......................................................................21

Fed. R. Civ. P. Rule 34 .................................................................................................................22

Fed. R. Civ. P. Rule 37(c)(1) .......................................................................................................22

Fed. R. Evid. 401, 402 ............................................................................................................10, 11

Fed. R. Evid. 403, 404(b)......................................................................................................17, 18

Federal Rules of Evidence Rules 801, 802, and 803 ....................................................................19

## FIRST MOTION *IN LIMINE*

## THE EXPERT REPORTS OF DR. DARRIN K. PORCHER AND DR. JENNIFER L. HAMMERS CONSTITUTE INADMISSIBLE HEARSAY AND MUST BE EXCLUDED

Plaintiff intends to submit the report of Dr. Darrin K. Porcher (Exhibit "1"), a purported police policies expert, into evidence *and* have Dr. Porcher testify at trial. (ECF Doc. 48, PageID # 247, Item 34; PageID # 241, Item 10). Likewise, Plaintiff intends to submit the report of forensic pathologist Dr. Jennifer L. Hammers (Exhibit "2") into evidence *and* have her testify at trial (ECF Doc. 48, PageID # 247, Item 35; PageID # 242, Item 11). Both experts' reports must be excluded as inadmissible hearsay. *See, e.g.*, *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 528 F. Supp. 3d 219, 231 (S.D.N.Y. 2021) ("expert reports would be inadmissible hearsay at trial"), *aff'd sub nom. Picard Tr. for SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 49 F.4th 170 (2d Cir. 2022); *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, 2013 WL 978980, at *7 (S.D.N.Y. Mar. 12, 2013), *quoting Aktas v. JMC Development Co., Inc.,* 2013 WL 55827, at *5 (N.D.N.Y. Jan. 3, 2013) ("Courts have held that where an expert is expected to testify at trial, his report is inadmissible hearsay and redundant"); *Granite Partners, L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 2002 WL 826956, at *7 (S.D.N.Y. May 1, 2002) ("The written reports of any expert expected to testify [at trial] is hereby excluded as inadmissible hearsay").

## SECOND MOTION *IN LIMINE*

## MINIMALLY, SUBSTANTIAL PORTIONS OF THE PORCHER REPORT AND THE ANTICIPATED TESTIMONY FORECASTED BY THAT REPORT MUST BE PRECLUDED

To the limited extent the Porcher report is not excluded from evidence in its entirety, a substantial portion of its content, and the testimony that content forecasts, must be precluded. In that regard, "[t]he proponent of expert testimony carries the burden of establishing its admissibility

by a preponderance of the evidence." *Choi v. Tower Rsch. Cap. LLC*, 2 F.4th 10, 20 (2d Cir. 2021).

### (i) Dr. Porcher's Legal Conclusions Must Be Excluded

Dr. Porcher's report and forecasted testimony "is essentially a lawyer's closing argument masquerading as an expert report." *Scism v. Ferris*, 2022 WL 2915745, at \*5 (N.D.N.Y. 2022), quoting *Gibbs v. Borona*, 2021 WL 1171558, at \*2 (D. Conn. Mar. 29, 2021); *see also Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003), *aff'd,* 99 F. App'x 274 (2d Cir. 2004) (noting that an expert may not present a "summation from the witness stand"). It is well established that an expert "may not give testimony stating ultimate legal conclusions." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991). Specific to the claims raised in this case, an expert "may not offer legal conclusions or advance opinions with respect to officers' compliance with constitutional standards." *Antic v. City of New York*, 2017 WL 3491967, at \*2 (S.D.N.Y. Aug. 14, 2017), *aff'd* 740 Fed. Appx. 203 (2d Cir. 2018). Nor may an expert offer "opinions that the force used by Defendants was 'unreasonable." *Rizk v. City of New York*, 2022 WL 900784, at \*3 (E.D.N.Y. Mar. 28, 2022); *see also Paul v. City of New York*, 2023 WL 3724152, at \*6 (S.D.N.Y. 2023) (expert may not testify about witness credibility, offer legal conclusions, or "conclusory, ultimate issue opinions" on whether "the type and amount of force used by the officers was excessive").

Notwithstanding these prohibitions, the Porcher Report, and the testimony it forecasts advances the following legal conclusions, all of which must be precluded:

> The County's "failure to identify the excessive deployment of a Taser by Officers Moran and Bettes is reflective of a systemic practice in the Nassau County Police Department which failed to identify police misconduct" (Exhibit "1", p. 13);

2

The "officer's failure to regress and await assistance to effectuate a non-compliant suspect's arrest contributed to the lethal outcome in this case" (*Id.*, p. 20);

Officers Bettes and Moran "recklessly embarked upon excessive usage of a Taser against Mr. Perez"; the "Nassau County Police Department failed to adequately train officers Bettes and Moran on the use of a taser"; and "the failure to identify the excessive application of a Taser by officers Moran and Bettes is reflective of a systemic practice in the Nassau County Police Department which failed to identify police misconduct" (*Id.*, p. 23);

"I view the excessive use of a Taser as a consequence of the department's failure to provide proper supervision and training[.] Mr. Perez clearly responded to the use of force against him in kind, creating a spiral of violence which had a tragic end" (*Id.*, p. 24);

The Officers' "actions contributed in deadly physical force employed against Mr. Perez which was unreasonable" (*Id.*, p. 25);

"I view the excessive use of a Taser, failure to employ de-escalation tactics, and improper placement of Mr. Perez in a prone position as consequences of the department's failure to provide proper supervision. The above failures contributed to the fatal occurrence which resulted in the death of Mr. Perez" (*Id.*, p. 26);

"Officers Sacco and Castronova failed to intercede when officers Bettes and Moran excessively Tasered Mr. Perez" (*Id.*, p. 27);

The actions of the County and the Officers "were willful, wanton, and a deviation from accepted police practices. Additionally, the Nassau County Executive Ed Mangano, failed to provide oversight upon the Nassau County Police Department which amounted to excessive force against Walter Perez. A municipality is tasked with maintaining a quality assurance mechanism of oversight over all departments within the purview of county government. Liability must be shouldered by Nassau County as a result of the Nassau County Police Department's failed policies (*Id.*, p. 27).

"The Nassau County Police Department's Internal Affairs Bureau failed to proactively impose upon members of the department that excessive force will not be tolerated"; "Officers Bettes and Moran pulled the trigger of their Tasers in excess of three times each during the incident which resulted in Mr. Perez losing his life"; the "NCPD failed to discipline officers for excessive Taser deployments prior to September 23, 2017; and that the *Greenaway* case "should have

acted as a harbinger for both the Nassau County policymakers and Police Department" (*Id.*, p. 28);

"The Nassau County Police Department possessed clear knowledge concerning excessive Taser trigger pulls"; "as a result of the NCPD's failure to implement a system monitoring excessive Taser trigger pulls by police, Officers Bates and Moran embarked upon a campaign of excessive Taser trigger pulls imposed upon Mr. Perez"; that the "Nassau County police officers on the scene failed to properly apply de-escalation techniques; that the Police Commissioner's statement that the officers did everything by the book is "troubling"; the "failure to identify the excessive deployment of a Taser by Officers Moran and Bettes is reflective of a systemic practice in the Nassau County Police Department which failed to identify police misconduct"; and "[i]t does not appear that the NCPD had any policy regarding the use of force while maintaining a detainee in a prone position and this, too, contributed to the lethal outcome in this case" (*Id.*, p. 29);

The Officers' "actions contributed in deadly physical force employed against Mr. Perez which was unreasonable" (*Id.*, p. 30);

"Nassau County failed to provide appropriate oversight and training over the Nassau County Police Department. As a result of this, Nassau County Police Department Officers Bettes and Moran excessively Tasered Mr. Perez coupled with officers placing him in the prone restraint. Nassau County Police Officers failed to apply de-escalation techniques as opposed to applying force to Mr. Perez who was an emotionally disturbed person (*Id.*);

"Sergeant Guadino failed to supervise the scene involving the apprehension of Mr. Perez. The Nassau County Police Department failed to provide basic supervision to its officers. The need for supervision of the officers should have been plainly obvious to Nassau County Police Department policymakers. These above actions and failures to act contributed to the death of Walter Perez while unarmed as a result of a use of force by police" (*Id.*, p. 31)

The above referenced content "does not aid the jury in making a decision; rather, it undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 1991). Accordingly, it must all be precluded.

16632038.1

**(ii)    Opinion That Intrudes Upon the Court's Role Must Be Excluded**

An expert may not offer testimony that infringes upon "the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Nimely*, 414 F.3d at 397; *see also Fate v. Village of Spring Valley*, 2013 WL 2649548, at *3 (an expert may not offer "testimony about the law of excessive force or about Defendants' [non]compliance with that law in the course of events giving rise to this case").  Examples of Dr. Porcher violating that well-settled principle of law follow:

> There is a general concept in policing and the use of force which is worth noting – that an officer is only permitted to use the amount of force necessary to overcome a threat or effectuate an arrest.  The 1989 Supreme Court decision, *Graham v. Conner* [sic], describes when police can use force under the standard of reasonableness. Any force use that is not necessary to effectuate an arrest or overcome a threat is simply not authorized by law and is excessive in the context of the use of force by a police officer.  Only the minimal amount of force necessary should be used (Exhibit "1", p. 6);

> The United States Supreme Court has ruled that an officer's use of force will be judged in light of an objectively reasonable standard. The reasonableness shall be determined by balancing the nature and quality of the intrusions with the countervailing governmental interests (*Id.*, p. 20);

> Police shall utilize the amount of force that is objectively reasonable, considering the totality of the circumstances in a given situation, in order to effect an arrest and/or accomplish the lawful performance of duty while protecting the public (*Id.*, p. 25);

> Officers shall use only the amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose.  When determining whether to apply force and evaluating whether an officer has used reasonable force, officers should consider the availability of other options and their possible effectiveness (*Id.*);

> Almost thirty years ago, the United States Supreme Court held in *City of Canton v. Harris*, 489 U.S. 378 (1989), that local governments can be liable under section 1983 for damages for their

deliberately indifferent failures to train or supervise their employees who, as a result, commit constitutional violations (*Id.*, p. 26);

Police Officers must act upon the duty to intervene, to prevent or stop any member from conducting any act that is unethical or violates the law or policy (e.g., excessive force, or unnecessary force, theft, fraud, sexual misconduct, harassment, and falsifying documents etc.). *Ortiz v. Kramer*, (1989);

Law enforcement officials have a legal duty to intervene on behalf of a citizen whose rights are being violated. In cases where law enforcement officials do not intercede with their fellow officers to ensure citizens' rights are being protected, they are liable under Section 1983 of the Civil Rights Act of 1871.

According to "Section 1983 Litigation", Section 1983 applies to situations such as unjustifiable arrests, excessive force by a fellow officer, and any constitutional violation by a law enforcement official. If an officer does not act to intervene in a situation where a fellow law enforcement official is engaging in misconduct, they can face serious consequences for themselves and their careers. The 2d Circuit defines the duty to intervene as follows:

> A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent." (*Figueroa v. Mazza* 2016).

> Trusting the judgment of your fellow officers while being cognizant of your duty to intervene when necessary is a critical balance to obtain. Even without all the information, the argument, "It was their call, I was just there," is not enough to shield an officer from liability if s/he enters the scene and fails to intervene when an individual's statutory or constitutional rights are violated. Officers have an affirmative duty to act, or report based on a fellow officer's actions. This requires subjective judgment on the officer's part.

> Police officers are sworn to protect the constitutional rights of citizens, enforce the laws and comply with agency established rules, regulations, policies, and procedures. Police are held to a higher standard of ethical behavior by society because they are considered the guardians or gatekeepers of public trust. While the majority of police officers enforce the laws without breaking them, police

6

> corruption and misconduct is recognized as a universal
> problem that is evident in many police departments
> nationwide.
>
> Police corruption cannot be driven away by repressive or
> temporary measures.  When police misconduct occurs, the
> agency must have a system in place to investigate and
> address the behavior.  In addition to the investigation of
> police misconduct complaints, utilization of early warning
> systems and performance reviews provide additional data to
> monitor officers' conduct individually and the force as a
> whole (*Id.*, pp. 26-27);

Police shall utilize the amount of force that is objectively
reasonable, considering the totality of circumstances in a given
situation, in order to affect an arrest and/or accomplish the lawful
performance of duty while protecting the public.

Officers shall use only the amount of force that reasonably appears
necessary given the facts and circumstances perceived by the officer
at the time of the event to accomplish a legitimate law enforcement
purpose.  When determining whether to apply force and evaluating
whether an officer has used reasonable force, officers should
consider the availability of other options and their possible
effectiveness (*Id.*, p. 30).

Because all the referenced content and forecasted testimony infringes upon "the role of the

trial judge in instructing the jury as to the applicable law or the role of the jury in applying that

law to the facts before it" (*Nimely*, 414 F.3d at 397), it must be precluded.  Notably, the District

Court in *Ellis v. City of Providence, Kentucky*, 2023 WL 4919683, at *8 (W.D. Ky. Aug. 1, 2023)

did just that, precluding Dr. Porcher from providing similar testimony and explaining that:

> Porcher's opinion that Dukes used excessive force infringes on the
> province of the jury applying a United States Supreme Court case,
> *Graham v. Connor*, 490 U.S. 386 (1989), and concluding that
> 'Dukes' [] actions clearly reflect excessive force. (Porcher Expert
> Report 19-22).  Again, Porcher gives a legal conclusion and tells the
> jury how it should decide the case. *See Woods*, 110 F.3d at 1220;
> *DeMerrell*, 206 F. App'x at 426-27.  In this regard, Porcher's
> analysis not only usurps the jury; it usurps the Court.  Porcher is not
> a lawyer and is not qualified to explain *Graham v. Connor* or any
> other legal standard to the jury.  And even if he was, it is not proper
> for an expert witness to explain the law.

7

The District Court in *Maselli v. Durden*, 2022 WL 18542265, at *2 (D.N.H. May 12, 2022)

did the same, concluding that Dr. Porcher continues on to opine that the officers' actions were

unreasonable under the standard established in *Graham v. Connor*, 490 U.S. 386 (1989), which is

a legal conclusion, not an acceptable expert opinion.  Therefore, Porcher will not be allowed to

give his opinions on excessive force").

### (iii)    Opinion And Testimony Regarding Police Tactics Allegedly Employed Prior To The Use Of Force Must Be Excluded

As the Second Circuit Court of Appeals explained in *Salim v. Proulx*, 93 F.3d 86, 92 (2d

Cir. 1996):

> Plaintiff faults Proulx for various violations of police procedure,
> such as failing to carry a radio or call for back-up, and also for failing
> to disengage when the other children entered the fray.  However,
> *Officer Proulx's actions leading up to the shooting are irrelevant to*
> *the objective reasonableness of his conduct at the moment he*
> *decided to employ deadly force*.  The reasonableness inquiry
> depends only upon the officer's knowledge of circumstances
> immediately prior to and at the moment that he made the
> split-second decision to employ deadly force.

(emphasis added).  *See also City and County of San Francisco, California v. Sheehan*, 575 U.S.

600, 616 (2015) (holding that Plaintiff "cannot 'establish a Fourth Amendment violation based

merely on bad tactics that result in a deadly confrontation that could have been avoided");

*Rose v. City of Utica*, 777 Fed. Appx. 575, 577 fn. 2 (2d Cir. 2019) (holding that "whether [the

officer] followed the [de-escalation] policies or not is irrelevant to whether, at the time he fired the

shots, [the officer] was acting reasonably under the Constitution"); *Dasrath v. City of New York*,

2018 WL 10501877, at *6, fn. 13 (E.D.N.Y. Sept. 25, 2018) ("To the extent that the Plaintiff bases

his excessive force claim on violations of police procedure for dealing with an EDP [emotionally

disturbed person], that argument fails as a matter of law"); *Phillips v. City of Middletown*, 2021

WL 4462821, at *6 (S.D.N.Y. Sept. 29, 2021) (reiterating that "the Responding Officer's actions

8

leading up to the shooting are irrelevant" to the reasonableness of the use of force); *Cruz v. City of New Rochelle*, 2017 WL 1402122, at \*26 (S.D.N.Y. 2017) (relying on *Sheehan* to hold that "[d]efendants cannot be held liable under the Fourth Amendment based on 'bad tactics' or expert opinion that they failed to follow their training").

Despite such precedent, Dr. Porcher opines that the Officers failed to "de-escalate" in accordance with the ICAT training module; that their "tactical plan" to handcuff Mr. Perez was inconsistent with the ICAT training module which encourages a "tactical pause"; that the officers "failed to introduce [the ICAT system's] applications"; and that "an isolation and containment strategy would have slowed down the incident pending the arrival of additional resources" (Exhibit "1", pp. 10-12; 17-18; 18-20)[1]. Dr. Porcher also opines that the Officers "were trained in the Nassau County Decision Model which directs officers to gather information and intelligence; however, they failed to remember the contents"; that the officers "don't recall being taught tactical repositioning"; and that "[r]epositioning or backing out of the bedroom would have been in accordance with tactical repositioning" (*Id.*, p. 10).

Finally, Dr. Porcher opines that upon responding to the scene and observing the decedent's "erratic" behavior, the Officers "should have requested the patrol supervisor in accordance with Nassau County Police Procedure OPS 1155 Mentally Disabled Persons"; the Officers "violated Nassau County Police Department Procedures OPS 1155"; and "the unavailability of the Mobile Crisis Intervention Team during the incident was a contributing factor to the officers' mismanagement of Mr. Perez" (*Id.*, p. 9)[2].

---

[1] For the reasons set forth in this section of our memorandum, Defendants move below to preclude introduction of the ICAT Training Guide.

[2] For the reasons set forth in this section of our memorandum, Defendants move below to preclude introduction of Nassau County Police Department Procedures OPS 1155.

16632038.1

Significantly, the district court in *Sapp v. Marcum*, 2023 WL 3965718, at *5 (M.D. Florida, June 13, 2023) precluded identical opinion evidence proffered by Dr. Porcher, explaining that:

> Dr. Porcher's opinion that the officers should have de-escalated, or slowed down, the incident focuses on conduct that occurred before the Plaintiff leveled her firearm at the police, which is not relevant to the *Graham* analysis. The Defendants are correct when they assert Dr. Porcher's critique of the officer's tactics does not support an excessive force claim. A party cannot establish a Fourth Amendment violation based merely on bad tactics that resulted in a deadly confrontation that could have been avoided. *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 615 (2015). *Dr. Porcher's de-escalation opinion when boiled down asserts the police officers employed bad tactics, and as such his opinion is contrary to the law, is unhelpful to the jury, and is inadmissible.*

(emphasis added).

### (a)   Opinion Regarding Alleged Policy Violations Must Be Excluded

Dr. Porcher's Report offers a myriad of legal conclusions with respect to alleged NCPD policy violations. As an initial matter, "violations of internal procedures do not rise to the level of a constitutional violation." *Phillips,* 2021 WL 4462821, at *6; *see also Vazquez v. City of N.Y.*, 2014 WL 4388497, at *13, n.6 (S.D.N.Y. Sept. 5, 2014) ("Section 1983 'protects Plaintiffs from constitutional violations, not violations of departmental regulations and police practices").

Upholding the district court's exclusion of policy evidence in an excessive force case, the Second Circuit explained in *Abeyta v. City of New York*, 588 F. App'x 24, 25 (2d Cir. 2014) that:

> [T]he standards set forth as per NYPD procedure are merely guidelines established by NYPD and are not the standards of the United States Constitution. Indeed, the NYPD Patrol Guide and the Constitution of the United States of America are not coextensive. A particular action could potentially violate the Patrol Guide without violating the Constitution. In light of Plaintiff's claims that his constitutional rights were violated, any NYPD guidelines, whether or not followed to the letter, are irrelevant to the determination of whether Plaintiff's constitutional rights were violated. *See* Fed. R. Evid. 401, 402.

10

> The District Court was entitled to find that evidence of the
> procedures and guides could have "unduly confuse[d] the jury"
> because a departure from the guides does not necessarily establish a
> legal or constitutional violation.

*See also Galapo v. City of New York*, 95 N.Y.2d 568, 574–75 (2000) (holding that NYPD

Patrol Guide "is an internal manual not a body of law or regulation establishing clear legal duties

that should serve as a basis for civil liability of municipalities"); *Edwards v. City of New York*,

2011 WL 2748665, at *4 (E.D.N.Y. July 13, 2011) (precluding patrol guide since "the patrol guide

is not relevant to the claims against [the defendant officer] and the probative value is substantially

outweighed by the danger of confusion of the issues under Federal Rule of Evidence 403");

*cf Bermudez v. City of New York*, 2019 WL 136633, at *5 (E.D.N.Y. Jan. 8, 2019) ("Defendants

are correct that a violation of the NYPD Patrol Guide does not, in and of itself, constitute

unreasonable conduct in an excessive force case. However, several courts in this Circuit have

permitted parties to introduce Patrol Guide excerpts as relevant and helpful to determining the

reasonableness of an officer's conduct").

Dr. Porcher's report, and thus his anticipated testimony, includes the opinion that the

officers violated Nassau County Police Department Procedures OPS 1155 Mentally Disabled

Persons (Exhibit "3") by failing to request a patrol supervisor upon initially observing Mr. Perez

and by failing to request the assistance of mental health professionals to respond to the scene prior

to the use of force (Exhibit "1", pp. 9, 26). Similarly, Dr. Porcher's report signals his intent to

testify that the officers violated the ICAT model (Exhibit "4"), which recommends that planning,

de-escalation, and other tactics be employed prior to the use of force (Exhibit "1", pp. 10-12;

17-20). However, *Sheehan*, *Salim*, *Rose,* and numerous other precedents establish unequivocally

that such evidence is irrelevant to the question of whether the officers employed excessive force.

Accordingly, the ICAT model and Policy 1155 should be excluded from evidence, as should

11

Dr. Porcher's opinion on such tactics and policy violations, whether expressed in his report or during his testimony. *See, e.g., Dasrath,* 2018 WL 10501877, at \*6, fn. 13 (E.D.N.Y. Sept. 25, 2018) ("To the extent that the Plaintiff bases his excessive force claim on violations of police procedure for dealing with an EDP [emotionally disturbed person], that argument fails as a matter of law").

To the limited extent any of the policies relied upon or cited by Dr. Porcher are not precluded, are deemed relevant to the issue of excessive force, and are not unduly prejudicial, it remains that Dr. Porcher "may testify that certain facts, if found by the jury, would violate police procedures, [but] he may not opine on whether the evidence shows those facts." *Rizk*, 2022 WL 900784, at \*3 (further holding that though an expert, if found qualified, "may testify about what constitutes accepted police standards, he should not be permitted to opine on "whether Defendants deviated from such standards").

### (b)    Opinion Evidence That Manufacturer's Recommendations Were Violated Must Be Precluded

Like the alleged policy violations discussed above, Dr. Porcher's opinion that that the Tasers were deployed outside of manufacturer's guidelines (Exhibit "1", pp. 19; 20-22) is also irrelevant and must be precluded. *See, e.g., Pagan v. City of New York*, 2019 WL 8128482, at \*5, fn 8 (E.D.N.Y. Mar. 28, 2019) (expert's "sole conclusion – that he 'can say with a great deal of certainty that [Defendant Pun] deployed the Taser outside of the manufacturers [*sic*] recommended guidelines' (*id.* at 16) – is irrelevant to the issue").

### (c)    Opinion Evidence as To What Constitutes A "Successful Taser Application" Under NCPD Policy Must Be Excluded

Dr. Porcher's report and anticipated testimony repeatedly offers opinion that the officers' use of Tasers during the subject incident violated County policies (Exhibit "1", pp. 13-15; 20-24). Because such opinions run counter to the law, they must be precluded.

12

Dr. Porcher represents that NCPD Procedure OPS 12430 states officers "will discharge no more than 3 successful applications of the ECD on a single subject" and opines that the officers "were in violation of [that] policy because a successful Taser application consists of discharging an electrical current into a subject with a Taser" (Exhibit "1", p. 13; *see also* pp. 22-23).  As set forth above, he must, at minimum, be precluded from opining that the policy was violated. Moreover, he must be precluded from offering an opinion as to whether "a successful Taser application," as defined in the NCPD policy, occurred during this incident.

First, Dr. Porcher's representation that "a successful Taser application consists of discharging an electrical current into a subject with a Taser" (*Id.*, p. 13) is an incomplete definition. The full definition of a successful Taser application under NCPD Policy states:

> **Successful Application**:  the result of discharging an ECD where the probes make contact with the subject's body, or the unit itself makes direct contact with the subject's body, *to conduct energy that affects the sensory and motor functions of the nervous system.*

(emphasis added) (Exhibit "5").

There is nothing in Dr. Porcher's report or in his CV (Exhibit "1") indicating he has the requisite education or experience necessary to offer an expert opinion on whether the Taser applications in this case "conduct[ed] energy that affect[ed] the sensory and motor functions of the [decedent's] nervous system."  Like the expert disqualified in *Fate,* Dr. Porcher "is not a physician, does not have any qualifications entitling him to opine on the immediate or long-term medical effects of the disputed tasing in this case, *and was not present at the time of the events in question.*" (emphasis added).  *Fate*, 2013 WL 2649548, at *5.  Nor do Dr. Porcher's submissions "indicate [he has] any background in electrical engineering, medicine, or other related disciplines that would qualify him as an expert in the mechanics, operation, or potential physical effects of tasers" (*Id.*, at *4).  Finally, Dr. Porcher's submissions make clear that he "has neither studied nor conducted

16632038.1

published research on these aspects of tasers." (*Id.*). In sum, Dr. Porcher is not qualified to offer expert opinion that the Taser applications in this case "conduct[ed] energy that affect[ed] the sensory and motor functions of the [decedent's] nervous system," or, consistent with that requirement, that the officers utilized more than three (3) successful applications. *See, e.g., Fate*, 2013 WL 2649548, at *5 ("any testimony in which Brave opines on how the use of a taser in this case affected Plaintiff and on the potential health consequences of that use of a taser is hereby stricken").

### (d)    Medical Opinion Evidence from Dr. Porcher Must Be Excluded

Dr. Porcher's report contains the following discussion (Exhibit "1", p. 15):

> Mr. Perez was placed in the prone position by [the officers], who positioned Walter on his chest (citation omitted).

> The prone position restricts the rise and fall of the chest which inhibits breathing. Death due to a head-down position with hyper flexion of the neck can result from police placing suspects in the prone position. It is a critical condition arising out of this particular body positions that can lead to mechanical obstruction of respiration. Restraining a person in a face-down position is likely to cause a greater restriction of breathing that restraining a person face-up.

> Multiple cases of death by positional asphyxia have been associated with the prone restraint position. This is especially true when the physical restraint includes placing the individual in a stomach down position. Many law enforcement agencies are taught to avoid restraining people face-down.

The foregoing passages are substantially similar to those contained in the report Dr. Porcher submitted in *Maselli v. Durden*, *supra*, as set forth below:

> Edward was placed in the prone position which is a chest down position on the floor as the officers applied pressure on top of Edward's back. As a result of the officers applying pressure to Edward's back, the rise and fall of his chest became grossly restricted. This restricted the flow of oxygen into Edward's lungs which prohibited him from breathing properly.

14

> Death due to a head-down position with hyper flexion of the neck can result from police placing suspects in the prone position. It is a critical condition arising out of this particular body positions that can lead to mechanical obstruction of respiration. Restraining a person in a facedown position is likely to cause a greater restriction of breathing than restraining a person face-up.
>
> Multiple cases of death by positional asphyxia have been associated with the prone restraint position. This is especially true when the physical restraint includes placing the individual in a stomach down position. Many law enforcement agencies are taught to avoid restraining people face-down. Mr. Maselli was attempting to gain a consistent flow of oxygen into his lungs to allow him proper breathing.

(Exhibit "6", p. 10).

Dr. Porcher's opinion on this medical/causation issue should be precluded, as it was in *Masselli*, 2022 WL 18542265, at *2 ("Because Porcher has no medical training, he has not shown that he is qualified to give that opinion"); *see also Giles v. Rhodes*, 2000 WL 1425046, at *20–21 (S.D.N.Y. Sept. 27, 2000) (precluding "use of force expert" from testifying as to causation of physical injuries because "expert" had "no medical training, no specific training on the mechanisms of injuries and has never before testified concerning that subject. As Plaintiff points out, there is a branch of medicine that specializes in determining the causation of injuries-forensic pathology").

### (e)    Dr. Porcher Must Be Precluded From Offering His Version Of The Facts

Dr. Porcher's report, and thus his anticipated testimony, is based solely upon his review of documents (Exhibit "1" pp. 2-5). He has no personal knowledge of what transpired during the incident in question yet offers his version and interpretation of the facts throughout his report (*Id.*, pp. 7-17). Such content and forecasted testimony must be precluded because it does "no more than counsel for Plaintiff will do in argument' – it merely recites facts that other witnesses have firsthand knowledge of and 'propound[s] a particular interpretation of' those facts. *In re Elysium*

*Health-ChromaDex Litig.,* 2022 WL 421135, at \*29 (S.D.N.Y. Feb. 11, 2022), quoting *Primavera*

*Familienstifung v. Askin*, 130 F. Supp. 2d 450, 530 (S.D.N.Y. 2001), *abrogated on other grounds*

*by Casey v. Merck & Co., Inc.*, 653 F.3d 95 (2d Cir. 2011)). Indeed, "testimony by fact witnesses

familiar with those documents would be far more appropriate and renders the expert witness'

secondhand knowledge unnecessary for the edification of the jury." *LinkCo, Inc. v. Fujitsu Ltd.*,

2002 WL 1585551, at \*2 (S.D.N.Y. July 16, 2002); *see also Brown v. Mermaid Plaza Assocs.,*

*LLC*, 2016 WL 5802779, at \*10 (E.D.N.Y. July 20, 2016), *report and recommendation adopted*,

2016 WL 5716414 (E.D.N.Y. Sept. 30, 2016) (same).

    **(f)**    **Content and Testimony Related to the *Greenaway* Case Must Be Excluded**

    The Porcher Report references and relies upon the case of *Shuay'b Greenaway v. County*

*of Nassau* (11-cv-2024) (WFK)(AKT) (Exhibit "1", pp. 24, 28) to opine and conclude as follows:

> On April 25, 2010, Shuay'b Greenaway was Tasered four times
> coupled with simultaneous deployments by Nassau County Police
> which resulted in a jury decision by the court regarding the use of
> Tasers. This should have acted as a harbinger for both the Nassau
> County policymakers and Police Department to effectively monitor
> The Nassau County Police Department possessed clear knowledge
> concerning excessive Taser trigger pulls; however, they refused to
> implement a system of oversight. As a result of the NCPD's failure
> to implement a system monitoring excessive Taser trigger pulls by
> police, Officers Bettes and Moran embarked upon a campaign of
> excessive Taser trigger pulls imposed upon Mr. Perez.

*(Id.,* at pp. 28-29). Such content, as well as any attempt to reference or elicit testimony related to

the *Greenaway* case, must be precluded. *See, e.g., Woolfolk v. Baldofsky*, 2022 WL 2600132, at

\*5 (E.D.N.Y. July 8, 2022) (holding that "references to misconduct by other police officers who

are not parties to this case are not relevant" and "the probative value of such evidence is

substantially outweighed by the danger of unfair prejudice and confusion because it may suggest

to the jury that Defendant acted in conformity with the wrongful conduct of other officers." *Id.*

Moreover, *Greenaway* was decided upon readily distinguishable facts, rendering whatever relevance it might have (none) far outweighed by its prejudicial impact on the jury. Even Dr. Porcher's interpretation of the facts concedes that Mr. Perez actively resisted arrest, lunged at an officer, attempted to punch him, ripped a dart probe out of his chest after an initial taser deployment, then pushed an officer into a wall or closet (Exhibit "1", pp. 7-8). Conversely, the Plaintiff in *Greenaway* claimed to be passively resistant to police directives that he go to a hospital for psychiatric evaluation before being Tased three or four times (*see Greenaway v. Cnty. of Nassau*, 97 F. Supp. 3d 225, 230 (E.D.N.Y. 2015)), and the jury ultimately accepted Plaintiff's version of the facts.

## THIRD MOTION *IN LIMINE*

### PRECLUDING PLAINTIFF FROM ARGUING OR SOLICITING EVIDENCE TO THE EFFECT THAT THE OFFICERS SHOULD HAVE RESPONDED DIFFERENTLY OR USED LESS FORCE

As Judge Kuntz held in *Woolfolk,* 2022 WL 2600132, at \*6 (E.D.N.Y. July 8, 2022):

> Under *Graham v. Connor*, the standard for cases involving excessive force is one of reasonableness, which "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989). This analysis "does not include an evaluation of the choices, or lack thereof, the officer has at his disposal at the relevant moment." *Bermudez*, 2019 U.S. Dist. LEXIS 3442, at \*27 (citing cases). The availability of alternatives thus has limited probative value. *See Bancroft v. City of Mt. Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (McMahon, J.) (explaining that if the force used was reasonable, "it does not matter that some less intrusive alternative would have done the job"). And whatever relevance it may have is outweighed by the risk of unfairly prejudicing Defendant and confusing the jury. *See Bermudez*, 2019 U.S. Dist. LEXIS 3442, at \*27 ("[P]ermitting Plaintiff to inquire into alternative or lesser means of force would also run afoul of Rule 403 by confusing the triable issues before the jury."). The Court thus grants Defendant's motion on this point.

17

## FOURTH MOTION *IN LIMINE*

### PRECLUDING PLAINTIFF FROM MAKING REFERENCE TO
### ANY UNRELATED EXAMPLES OF EXCESSIVE FORCE

Defendants request an Order precluding Plaintiff from referencing George Floyd or any other example(s) of excessive force, publicized or not, that is unrelated to the parties in this action. *See Pierce v. City of New York*, 2017 WL 10188217, at *2 (E.D.N.Y. June 9, 2017) (holding that "Plaintiff is precluded, pursuant to Rule 403, from making reference to any unrelated examples of excessive force that have been publicized. Any claim that another individual may have against certain police officers is entirely unrelated to the allegations here"); *see also Woolfolk*, 2022 WL 2600132, at *5 ("The Court agrees that references to misconduct by other police officers who are not parties to this case are not relevant").

As further explained in *Bermudez v. City of New York*, 2019 WL 136633, at *9 (E.D.N.Y. Jan. 8, 2019):

> [T]estimony and argument regarding police actions not the subject of Plaintiff's claims are not relevant to the jury's task. Further, evidence concerning police misconduct in general can be viewed as a form of Rule 404(b) evidence and risks confusion and prejudice under Rule 403, leading the jury to find that *these defendants* acted in conformity with the alleged misconduct of other officers.

## FIFTH MOTION *IN LIMINE*

### THE ICAT TRAINING MANUAL AND RELATED PROCEDURES
### MUST BE EXCLUDED FROM EVIDENCE

The pretrial order indicates that Plaintiff intends to submit the ICAT Training Guide for Defusing Critical Incidents (Exhibit "4") into evidence (Doc. 48, p. 18, Item 3, Bates 228-299). As set forth in subsection (iii)(a) and (b) of Defendants' Second Motion in Limine, de-escalation and tactics evidence is wholly irrelevant to the jury's assessment of the objective reasonableness of the officers' conduct at the moment they decided to employ force to subdue Mr. Perez and will

18

only serve to confuse the jury. Accordingly, the referenced manuals and procedures which address such tactics, must be excluded from evidence.

## SIXTH MOTION *IN LIMINE*

### PORTIONS OF DR. HAMMERS' REPORT AND THE TESTIMONY IT FORECASTS MUST BE PRECLUDED

For the reasons set forth above with respect to Dr. Porcher's report and anticipated testimony, to the limited extent Dr. Hammers' report is not precluded in its entirety, the report's summary (and forecasted testimony) of the contents of the Amended Complaint, NCPD records, hospital records, AMT records, police officers' and AMT's deposition testimony, the Attorney General's Report, and the Porcher report (Exhibit "2", pp. 4-8), must be excluded from evidence.

## SEVENTH MOTION *IN LIMINE*

### PLAINTIFF'S NOTICE OF CLAIM MUST BE EXCLUDED

The pretrial order indicates that Plaintiff intends to submit his Notice of Claim into evidence (Doc. 48, PageID # 245, Item 1). A Notice of Claim consists of nothing more than allegations and thus must be precluded as inadmissible hearsay. As explained in *Edelhertz v. City of Middletown*, 943 F. Supp. 2d 388, fn. 2 (S.D.N.Y. 2012) *aff'd* 714 F.3d 749 (2d Cir. 2013):

> The allegations made in the Complaint – a document that is evidence of nothing more than the existence of an accusation – are inadmissible hearsay, pursuant to Rules 801, 802, and 803 of the Federal Rules of Evidence. *In re Blech Sec. Litig.*, 94 Civ. 7696 (RWS), 2003 U.S. Dist. LEXIS 4650, 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003). As the Second Circuit has held, a complaint is not admissible to prove the truth of its contents. *Id.* (citing *Stevenson v. Hearst Consol. Publ'ns, Inc.*, 214 F.2d 902, 907 (2d Cir. 1954).

*See also Tomasino v. Estee Lauder Cos.*, 2015 WL 1470177, at *14 (E.D.N.Y. March 31, 2015) ("The complaint is not admissible into evidence").

19

## EIGHTH MOTION *IN LIMINE*

## NEWSPAPER ARTICLES MUST BE PRECLUDED

The pretrial order indicates that Plaintiff intends to submit copies of newspaper articles reporting on the subject incident (Exhibit "7"; Doc. 48, p. 18, Item 2, Bates 188-195). Such proposed evidence must be precluded as inadmissible hearsay. *See, e.g., Miles v. City of New York*, 2002 WL 31410346, at *4 (E.D.N.Y. Oct. 24, 2002) ("newspaper articles [are] inadmissible hearsay and unusable to defeat summary judgment"), quoting *Ladner v. City of New York*, 20 F.Supp.2d 509, 519 (E.D.N.Y. 1998).

## NINTH MOTION *IN LIMINE*

## THE TODD AFFIDAVIT MUST BE EXCLUDED FROM EVIDENCE

The pretrial order indicates that Plaintiff intends to submit an affidavit from Christopher Todd into evidence (Doc. 48, p. 20, Item 37). Such proposed evidence must be precluded. Mr. Todd is on Plaintiff's witness list (Doc. 48, p. 15, Item 14) and an affidavit is hearsay that "cannot be cross-examined." *Okeke v. N.Y. & Presbyterian Hosp.* 2017 WL 2484200, at *2 (S.D.N.Y. June 6, 2017); *see also Dickson v. New York State Off. of Child. & Fam. Servs.*, 2023 WL 8788908, at *5 (E.D.N.Y. Dec. 19, 2023) ("because Cooper is on the witness list and expected to testify at trial, Cooper's affidavit is excluded, and Defendant's motion is granted").

## TENTH MOTION *IN LIMINE*

## ANY REFERENCE OR EVIDENCE RELATING TO INDEMNIFICATION OR THE "COUNTY'S ATTORNEYS" MUST BE PRECLUDED

Plaintiff should be precluded from referencing or submitting evidence regarding indemnification of the individual defendants. As held in *Ashley v. Civil*, 2019 WL 1441124, at *10 (E.D.N.Y. April 1, 2019):

> The court agrees that evidence regarding indemnification would be prejudicial against Defendant, as such evidence might "encourage a

20

16632038.1

jury to inflate its damages award because it knows the government-not the individual defendant [] – is footing the bill." The court agrees that evidence regarding indemnification would be prejudicial against Defendant, as such evidence might "encourage a jury to inflate its damages award because it knows the government – not the individual defendant [] – is footing the bill." *Williams v. McCarthy*, No. 05-CV-10230 (SAS), 2007 U.S. Dist. LEXIS 79151, 2007 WL 3125314, at *7 n.46 (S.D.N.Y. Oct. 25, 2007) (quoting *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998)). See also *Nunez v. Diedrick*, No. 14-CV-4182 (RJS), 2017 U.S. Dist. LEXIS 199926, 2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017) ("[A]ny references to the City's potential indemnification obligations run the significant risk of unfairly prejudicing Defendant."); *Hernandez v. Kelly*, No. 09-CV-1576 (TLM) (LB), 2011 U.S. Dist. LEXIS 57114, 2011 WL 2117611, at *6 (E.D.N.Y. May 27, 2011) (finding that evidence regarding the City's potential indemnification of defendant police officers would be prejudicial against the defendants).

Referring to defense counsel as the County's attorneys would also be prejudicial to Defendants, as even such reference may create the impression that the County – often viewed as a deep pocket – will pay any potential verdict. *See Ross v. Guy*, 2022 WL 768196, at *6 (E.D.N.Y. Mar. 14, 2022) ("Courts in this district have concluded reference to defense counsel as 'City attorneys' in § 1983 cases may unfairly prejudice defendants").

## ELEVENTH MOTION *IN LIMINE*

### EVIDENCE REGARDING PURPORTED PECUNIARY OR ECONOMIC DAMAGES MUST BE PRECLUDED

Plaintiff's Rule 26 disclosure limited his damages claim to $10,000,000 for pain and suffering (Exhibit "8"). No economic damages were identified then or since, and Plaintiff's identified trial exhibits do not include anything related to economic or pecuniary damages (Doc. 48, pp. 18-19).

A Plaintiff is required to provide adverse parties with a detailed and current computation of the damages he seeks in an action. As expressly ordered by Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure:

21

16632038.1

...a party must, without awaiting a discovery request, provide to the other parties:

***

(iii)    a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

A party's failure to provide the damages computation required by Rule 26 can result in the preclusion of evidence on damages at trial. *See, e.g.*, Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information to supply evidence at a trial, unless the failure was substantially justified or is harmless."); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 293 (2d Cir. 2006) (affirming trial court's order precluding evidence of damages for Plaintiff's failure to comply with Rule 26). Preclusion of damages evidence is particularly appropriate where, as here, the required damages computation has not been provided, discovery is closed, and the parties are on the eve of trial. *See, e.g.*, *Design Strategy, Inc.*, 469 F.3d at 294, 297 (affirming preclusion of damages evidence finding Plaintiff's failure to comply with Rule 26 "was not harmless because discovery had been closed and because the trial date had already been postponed").

## TWELFTH MOTION *IN LIMINE*

### PLAINTIFF MUST BE PRECLUDED FROM SUBMITTING A SPECIFIC DOLLAR AMOUNT REGARDING NON-ECONOMIC DAMAGES TO THE JURY

"[S]pecifying target amounts for the jury to award is disfavored." *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031, 116 S. Ct. 2576, 135 L. Ed. 2d 1091 (1996). "A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. Specific proposals have a

22

real potential to sway the jury unduly.  We encourage trial judges to bar such recommendations." *Consorti*, 72 F.3d at 106.  Accordingly, the Court should "not permit Plaintiff to submit to the jury a specific dollar amount regarding [Plaintiff's] non-economic damages, including pain and suffering, in either [] opening statement or closing argument." *Reynolds v. Am. Airlines, Inc.*, 2017 WL 5613115, at *10 (E.D.N.Y. Nov. 21, 2017); *see also Ashley v. Civ.*, 2019 WL 1441124, at *11 (E.D.N.Y. Apr. 1, 2019) (same); *Equal Emp. Opportunity Comm'n v. United Health Programs of Am., Inc.*, 2017 WL 10088567, at *13 (E.D.N.Y. Sept. 4, 2017) ("The court will, therefore, preclude Plaintiffs from suggesting or requesting at trial a specific dollar amount regarding their noneconomic damages").

### THIRTEENTH MOTION *IN LIMINE*

### DEFENDANTS JOHN DOES AND JANE DOES 1-100 SHOULD BE REMOVED FROM THE CAPTION AND PLAINTIFF SHOULD BE PRECLUDED FROM RAISING CLAIMS AGAINST THEM AT TRIAL

Discovery has long since been completed and the John and Jane Doe defendants have never been identified or served.  Accordingly, they should be removed from the caption and Plaintiff should be precluded from raising claims against them at trial.  As held in *Jean-Laurent v. Hennessy*, 840 F. Supp.2d 529, 557 (E.D.N.Y. 2011):

> The court agrees that removal of 'P.O. John Doe' from the caption of this case is warranted because Plaintiff may not 'maintain a suit against officers on a 'John Doe' basis, or even sue some by name and then assert claims against unnamed defendants, and expect to receive a verdict and judgment against the named officers based on what John Doe allegedly did.' *Rasmussen v. City of New York,* 766 F.Supp.2d 399, 412 (E.D.N.Y. 2011).

> The court also finds that because 'P.O. John Doe' will be removed from the caption of this case, Plaintiff may not raise claims against 'P.O. John Doe' during the trial.

*See also Trs. of United Plant & Prod. Workers Loc. 175 Benefits Fund v. Carlo Lizza & Sons Paving, Inc.,* 2019 WL 5699992, at *1, fn. 1 (E.D.N.Y. Aug. 29, 2019) ("Where a Plaintiff

23

16632038.1

asserts claims against a fictitious entity, and failed to identify and serve the fictitious defendant in accordance with Federal Rule of Civil Procedure 4(m), those claims should be dismissed"), *report and recommendation adopted*, 2019 WL 4805044 (E.D.N.Y. Oct. 1, 2019); *Caldwell v. City of New York*, 2024 WL 774967, at *2 (S.D.N.Y. Feb. 26, 2024) (dismissing claim against "John Doe Defendants, as they have not been identified despite the completion of discovery").

### FOURTEENTH MOTION *IN LIMINE*

### PLAINTIFF SHOULD BE PRECLUDED FROM USING AND/OR REFERRING TO THE TERM "HOMICIDE" TO AVOID PREJUDICE TO THE DEFENSE AND JURY CONFUSION

The Court should preclude Plaintiff and Plaintiff's witnesses from using or referring to the term "homicide", and redact such conclusion from the medical examiner's report[3], as such use would be highly prejudicial and confuse the jury. "The medical examiner is required to choose the manner of death from five categories: 'natural, accident, suicide, homicide, and undetermined.'" *Bettis v. Bean*, 2015 WL 5725625, at *5, fn. 10 (D. Vt. Sept. 29, 2015). "[T]he coroner's classification of manner of death as being 'homicide' does not suggest excessive force." *DiGennaro v. Town of Gates Police Dep't*, 2013 WL 3097066, at *12 (W.D.N.Y. June 18, 2013). Because the term "homicide" suggests criminality, and that is not the intended usage when invoked by a medical examiner, any reference to Mr. Perez's death in such manner is extremely prejudicial to the defense because it allows the jury to infer that Defendants murdered Mr. Perez. *See, e.g., People v. Odell*, 26 A.D.3d 527, 529 (3d Dep't 2006) ("County Court inappropriately permitted the People's expert to opine that the infants' deaths constituted 'homicides.' Such characterization improperly invaded the province of the jury"); *Zal v. Steppe,* 968 F.2d 924, 925 (9th Cir. 1992)

---

[3] See, Pltf. Ex.32; Def. Ex. P [Docket No. 48, pp.19, 21].

24

(During *In Limine* proceedings, judge ordered the use of the words "homicide", "kill" and "murder" be excluded at trial to avoid undue influence and prejudicial effect on the jury).

**CONCLUSION**

Based on the foregoing, Defendants respectfully request that each of their foregoing Motions *In Limine*, One through Fourteenth, be granted in their entirety, and that such evidence be precluded as set forth above, together with such other and further relief the Court deems just and equitable.

Dated:   March 25, 2024
Garden City, New York

Bond, Schoeneck & King, PPLC

By: _____
Richard S. Finkel
Barbara M. Maisto
1010 Franklin Avenue
Garden City, New York 11530
(516) 267-6328
rfinkel@bsk.com
bmaisto@bsk.com
*Attorneys for Defendants*

16632038.1